**Louis F. ORTIZ, Plaintiff,**

v.

**CHICAGO TRANSIT AUTHORITY, a municipal corporation, Defendant.**

No. 84 C 4885.

United States District Court,
N.D. Illinois, E.D.

June 9, 1986.

Yolanda Haces, Flader and Haces, Chicago, Ill., for plaintiff.

Ronald F. Bartkowicz, Chicago Transit Authority, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Louis F. Ortiz ("Ortiz") filed this suit in June 1984, alleging that defendant Chicago Transit Authority ("CTA") discriminated against him based on his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when it refused to allow him to return to his former position after a medical leave. CTA now moves to dismiss the complaint or in the alternative for summary judgment against Ortiz, claiming that Ortiz's EEOC charge was not timely filed and that Ortiz has in any case failed to make out a *prima facie* case of discrimination. We deny defendant's motions.

### FACTS

Ortiz was hired by the CTA as a bus driver on November 30, 1978. He was diagnosed as having heart trouble on October 18, 1981, and thereafter took a medical leave and underwent bypass surgery. The operation was successful and on February 16, 1982, Ortiz's personal physician told him that he would be able to return to work as of March 1, 1982. Ortiz went to the CTA's medical department on February 24, 1982, where he was told that due to his heart condition and diabetic condition (which was at that time treated with insulin), he no longer qualified for the position of bus driver. CTA applied the guidelines promulgated by the U.S. Department of Transportation to reach this conclusion. The medical department found Ortiz fit for non-operating work, however, and his case was sent to the CTA's disability review committee. That committee confirmed the medical department's findings on February 26, 1982. Ortiz was told that someone would contact him within ten days regarding a new work assignment.

Ortiz was not given a new work assignment or allowed to return to work as a bus driver, however, although he contacted CTA on many occasions during the course of the next few months. On August 4, 1982, Ortiz produced a medical report from a second physician which also indicated that he was fit to return to work as a bus driver. That report further indicated that Ortiz was no longer taking insulin and that his diabetic condition was under control. The CTA decided to seek a third medical opinion and referred Ortiz to Dr. William Troyer of the University of Illinois Hospital. On November 1, 1982, Ortiz was offered a new position in "car service." Ortiz declined the position, which he considered a demotion, and on November 9, 1982, Dr. Troyer submitted a written opinion which indicated that he did not believe that Ortiz was ready to return to work as a bus driver.

As of February 1983 Ortiz had still not been allowed to return to work as a bus driver, although a fourth physician, Dr. Gustavo Bermudez, the chief of cardiology of Augustana Hospital, had also told the CTA that Ortiz was capable of returning to work. Ortiz knew that a white bus driver who had undergone bypass surgery in August 1982 had been allowed to return to work in October of 1982, and therefore suspected that his medical condition was not the only reason he was being kept from returning to his job. On February 8, 1983, Ortiz filed a claim of discrimination based on national origin with the EEOC. He received a right-to-sue letter from the EEOC on March 12, 1984 and filed this action on June 8, 1984.

At the suggestion of the court the parties agreed to have yet another doctor give an opinion, and the court named a doctor for that purpose. The instant motions were, in the interim, deferred. That doctor also concluded that Ortiz could return to work as a bus driver. However, Ortiz has still not been returned to his former position, apparently due to this lawsuit.

This court is somewhat uncertain about plaintiff's employment status. Plaintiff claims, and defendant does not deny, that he continues to be an employee, albeit on an inactive status. The parties have not discussed defendant's medical leave policies or the applicable collective bargaining contract provisions, and this court is unaware

whether or not an inactive status continues indefinitely or results, after a period of time, in a termination. If Ortiz continues to have a right to return to work if his health permits, then presumably he has (or had) a valid grievance he could have filed with his union to obtain relief. In addition, a failure to honor a request for a return to work could result in a retaliation claim against the employer if its refusal was due to this lawsuit. On the other hand, if an employee with a medical disability loses his right to return after a period of time, his right to return may depend on the outcome of a lawsuit such as this, which challenges his employer's refusal to permit him to return to active duty.

## DISCUSSION

Defendant first moves for dismissal of the complaint, alleging that Ortiz's charge of discrimination was not timely filed with the EEOC and that this court is therefore without jurisdiction of Ortiz's action. By statute, EEOC charges must be filed within 240 days of the discriminatory action, CTA argues,[1] and Ortiz was told that he could not return to his former position on February 24 and 26, 1982. Since Ortiz did not file his EEOC charge until nearly a year later, the CTA reasons, his cause of action is time-barred.

■ It is by now settled law, however, that the 240–day limitation applicable to filing Title VII claims with the EEOC is not a jurisdictional prerequisite, but rather akin to a statute of limitations. It is therefore subject to waiver, estoppel and equitable tolling. *Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Thus, for example, a defendant who has concealed the existence of a cause of action from a plaintiff may not rely on the plaintiff's inaction, since it has in part caused that inaction. Rather, such a defendant is estopped from asserting the existence of the statute of limitations, if to assert the statute would be to

defeat a plaintiff's claim. Likewise, the statute is said to be "tolled"—temporarily arrested—during a period in which a plaintiff remains unaware through no fault of his own that his rights have been infringed. The statute begins to run only when the plaintiff knows or should know of the existence of the cause of action. Thus in a Title VII case, the limitations period is activated when an employee either knows or should know that an unlawful employment practice has been committed. *See Stewart v. CPC International, Inc.,* 679 F.2d 117 (7th Cir.1982), *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 593 (9th Cir.1981), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983) (in Title VII cases "inquiry for purposes of determining when the limitations period begins to run must center on the date when the employee has notice of the unlawful act"); *Reeb v. Economic Opportunity Atlanta,* 516 F.2d 924 (5th Cir.1975) (time for filing employment discrimination charges with the EEOC does not begin to run until facts that would support a charge of discrimination were apparent or should have been apparent to a person with reasonably prudent regard to his rights who is similarly situated to the plaintiff).

■ Defendant claims that the limitation period began to run in February 1982, when the CTA told Ortiz that he was not ready to return to work driving a bus. Ortiz does not allege that he suspected the CTA's motives at that point, however, and this court does not find that Ortiz would have had any reason for suspicion—or indeed any cause of action—in February 1982. The disparate treatment alleged in Ortiz's complaint was not complete or apparent until a similarly situated white employee (if there was such an employee) was allowed to return to driving a bus while Ortiz continued to be prevented from doing so. *See Bey v. Schneider Sheet Metal, Inc.,* 596 F.Supp. 319, 322 (W.D.Pa.1984) (where employer classifies former employ-

1. The parties agree that a 240–day limitation applies in this case, so the court need not address that issue.

ee so as to deprive nonwhites of employment opportunities solely because of their race, time for filing begins to run on last date such unlawful practice occurred: "It is not the layoff itself of which plaintiffs complain, but the selective discrimination against blacks in the recall process"). The CTA's alleged discriminatory intent could not be described as "apparent" until October 1983 at the earliest. Ortiz's charge would thus be timely if filed with the EEOC at any time prior to June 1984. Ortiz filed his charge on February 8, 1984. Depending when in October he actually learned of the allegedly discriminatory reinstatement of a white employee, his charge was filed from four to five months in advance of the deadline. Ortiz also filed this action within 90 days of receiving his right-to-sue letter from the EEOC. We hold that Ortiz has fully complied with the timing provisions of Title VII, and that this court has jurisdiction of his suit.

Defendant CTA next challenges the merits of Ortiz's claim. Since both parties have submitted factual evidence in support of their respective positions, we treat this portion of the defendant's motion as one for summary judgment rather than as a motion to dismiss. Fed.R.Civ.P. 12(b). On a motion for summary judgment the moving party bears the burden of establishing the lack of a genuine issue of material fact. In reviewing the evidence submitted for consideration on such a motion, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cedillo v. International Ass'n of Bridge & Structural Iron Workers*, 603 F.2d 7 (7th Cir.1979).

The plaintiff in a discrimination suit bears the burden of proving that national origin was a determining factor, though not necessarily the only factor, in his treatment: in this case, that but for the defendant's motive to discriminate against him, he would have been reinstated. This burden is generally made out by means of indirect proof following the test set out in *McDon-*

*nell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and clarified in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In the context of a motion for summary judgment, this approach means that Ortiz must make out a *prima facie* case of discrimination by establishing: (1) that he was a member of the protected class; (2) that he was doing his job well enough to meet his employer's legitimate expectations; (3) that in spite of his performance he was prevented from resuming his job; and (4) that his employer continued to assign white employees to perform the work it refused to allow him to perform. If Ortiz successfully establishes a *prima facie* case, a rebuttable presumption of discrimination arises. The burden then falls on the defendant to articulate lawful reasons for its action. If the defendant is able to articulate a legitimate nondiscriminatory reason for its action, the presumption of discrimination dissolves and the burden falls on the plaintiff to prove that the proffered reasons are pretextual. This may be done either by showing that a discriminatory reason more likely motivated the employer's action or that the employer's proffered explanation is unworthy of credence.

Defendant apparently concedes that Ortiz has established a *prima facie* case, as it does not contest that Ortiz is of Hispanic origin, that he was a competent bus driver, that he was not allowed to return to driving a bus after his medical leave, or that positions for bus drivers remained open and were filled by white employees. Rather, defendant proceeds directly to the second step of the *McDonnell Douglas* analysis, claiming that Ortiz was no longer qualified to drive a bus after his operation. That certainly constitutes a legitimate, nondiscriminatory justification for the CTA's refusal to reinstate Ortiz. The burden thus returns to Ortiz, who must produce some evidence indicative of pretext in order to survive defendant's motion.

Again the record is unclear. Ortiz claims that two white employees who had

undergone open heart surgery were allowed to return to driving buses within months of their surgeries. The reports given by their doctors were immediately honored. Ortiz was prevented from returning to his bus, despite the fact that numerous physicians declared that he had recovered and was capable of returning to bus driving. Defendant does not dispute those claims, but the record does not indicate whether the cases were at all comparable.

In addition, Ortiz was not offered a new position with the CTA until many months after the decision not to reinstate him as bus driver had been implemented. We do not know whether employees are normally shifted to a new position more promptly, however, or whether similarly situated white employees are contacted within ten days, as CTA promised Ortiz he would be contacted. When Ortiz was finally contacted, however, he was offered a job in car service. The car service job involves heavy lifting, pulling oneself up onto cars by means of rails, and jumping up and down four-foot heights. It is not immediately apparent to this court that such a job would be less strenuous for a heart patient than driving a bus.

Without further information as to the reasons apparently similarly situated white employees received different treatment, this court cannot grant the defendant's motion. Genuine issues of material fact remain unresolved at present, and where tangled questions of motive and intent are at issue, summary judgment is especially inappropriate. *Cedillo*, 603 F.2d at 11. Defendant's procedure on its face appears appropriate: it had questions after a serious operation, it followed the contract by getting a third opinion, and that opinion, while different from others, bound the parties. Indeed, it is the unremarkable nature of that procedure which causes plaintiff's claim to be timely. Plaintiff has raised the issue of disparate treatment, but has not completely documented it. Were it not for defendant's failure to contest plaintiff's claim that certain similarly situated white employees received different treatment,

summary judgment would be warranted, and it is clear that plaintiff will have a difficult burden of proof to carry in ascribing the different treatment of three different medical cases to a discriminatory purpose on the CTA's part. For the moment, however, the summary judgment motion is premature, or at least incomplete.

## CONCLUSION

Defendant's motion to dismiss and its motion for summary judgment are denied.