**Marsha WISLOCKI–GOIN,**
**Plaintiff–Appellant,**

v.

**Darlene Wanda MEARS, and Lake**
**County, Indiana,**
**Defendants–Appellees.**

**No. 86–2930.**

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1987.
Decided Oct. 21, 1987.

---

Richard A. Miller, Gouveia & Miller, Merrillville, Ind., for plaintiff-appellant.

Robert S. Spear, Chief Counsel, Office of Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before RIPPLE and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

This appeal follows a one-day bench trial on Ms. Wislocki–Goin's Title VII claim of sex discrimination in employment. Ms. Goin had filed previously a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC) following the termination of her employment with the Lake County Superior Court, Juvenile Division, and the denial to her of a job in the Lake County Jail. The EEOC issued Ms. Goin a Notice of Right to Sue and she filed an action in the United States District Court for the Northern District of Indiana, Hammond Division. Ms. Goin appeals the district court's entry of judgment in favor

of the defendants. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

### I

### Background

A. *Facts*

In June 1982, Ms. Goin applied for a teaching position with the Lake County government at the Juvenile Detention Center in Crown Point, Indiana. She testified that she thought she was applying for a position working with juveniles at the Lake County Jail. Tr. at 27, 31. Ms. Goin's qualifications for the job included a bachelor's degree in elementary education and child psychology from Purdue University and a master's degree in education with a certification in learning disabilities, also from Purdue. She also had significant employment experience. Ms. Goin interviewed with several people for the position including Judge Darlene Wanda Mears, the Superior Court Judge who oversees the Juvenile Detention Center. She was hired in August 1982, and was assigned duties, at least temporarily, in the Lake County Juvenile Detention Center. Ms. Goin believed that she would receive the position at the Lake County Jail when that job later became available. Tr. at 35.

The record reflects that Judge Mears strives to ensure that the Juvenile Center maintains a professional image. She considers it important that all employees dress conservatively. Although there is no written dress code, Judge Mears describes her dress standards as the "Brooks Brothers look." Tr. at 165. Employees who fail to conform with Judge Mears' appearance requirements are reprimanded. Ms. Goin failed to conform to Judge Mears' appearance requirements at work by wearing excessive makeup and by wearing her hair down. Ms. Goin was reprimanded orally.[1]

Ms. Goin's dress and grooming habits were not the only conduct of which Judge Mears disapproved. At a deposition hearing of a disturbed juvenile, Ms. Goin wept openly in front of the child. The chief referee, believing that Ms. Goin's conduct was unprofessional and inappropriate, reported the incident directly to Judge Mears. In addition, Ms. Goin wrote a "Dear Santa" letter for a Christmas party which Judge Mears apparently considered offensive. Otherwise, Ms. Goin performed her teaching duties in a thoughtful, capable, and professional manner. Ms. Goin had not been informed that her work was in any way unsatisfactory.

In October of 1982, Ms. Goin learned that she would not be receiving the job at the Lake County Jail. Ms. Goin was told that Judge Mears had decided to hire Mr. Mark Helmerich for that position. Mr. Helmerich had not actively sought the position, and the district court concluded that he was not as qualified as Ms. Goin. *Wislocki–Goin v. Mears*, No. H 84–39, order at 17 (N.D.Ind. Oct. 20, 1986) [hereinafter Order]; R.42 at 17. Ms. Goin was advised by the superintendent of the Juvenile Center to "just let it go, these are the kinds of decisions that are made and it's all for the best, just let it go." Tr. at 40. During discovery in this action, in May of 1985, Ms. Goin learned that she did not get the job because the county sheriff-elect refused to hire women for positions at the jail. This information was disclosed by Judge Mears, who testified in her deposition that the sheriff told her that "there's no broad that's going to work in this facility." Tr. at 175. At trial, Judge Mears changed her testimony and said that she learned this information second-hand. *Id.* at 175–76.

---

1. There is some disagreement about the number of times that Ms. Goin was reprimanded about her dress and grooming. Ms. Goin testified that she was reprimanded only one time. Tr. at 64. The district court concluded that she was reprimanded on two occasions, and that after having been reprimanded, she wore her hair down several times subsequently. *Wislocki–Goin v. Mears*, No. H 84–39, order at 3 (N.D.Ind. Oct. 20, 1986); R.42 at 3. Ms. Goin claims that this is not supported by the record and is "clearly erroneous," although she admits to wearing her hair down on at least two occasions. Appellant's Br. at 13. We believe the record is adequate to support the findings of the trial judge. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

By a letter dated January 3, 1983, Ms. Goin was discharged from her position as a teacher in the Lake County Juvenile Center. The termination was, however, rescinded after it was determined that Ms. Goin was entitled to a hearing pursuant to the Lake County Personnel Policies Manual. At the hearing, Wayne Wackowski, the education director of the Juvenile Detention Center, gave two reasons for disciplinary action against Ms. Goin: 1) two acts of insubordination; and 2) two incidents of failure to conduct herself in such a manner as to promote or support the purposes, goals, policies, position, and philosophy of the Juvenile Court.[2] The two incidents of insubordination occurred when Ms. Goin wore her hair down and wore excessive makeup. After the hearing, the panel recommended that Judge Mears not discharge Ms. Goin. However, Judge Mears disagreed and ordered the panel to terminate Ms. Goin. In late January 1983, Ms. Goin was notified that she was terminated for two acts of insubordination—wearing her hair down and wearing excessive makeup. Joint Ex. 10; Tr. at 120–21.

The evidence presented at trial showed that, in addition to Judge Mears, many women held important positions at the Juvenile Center. Ms. Goin was originally hired as a teacher at the Juvenile Center to replace another woman, Donna Echterling. A second teaching position was later filled by Patricia Haughton, a female. At the time of trial, two of the four hearing referees were female, as was the chief hearing referee. In addition, a female was the head of the Intake Department, and another female served as the Court Executive. Tr. at 196–97.

Ms. Goin filed a discrimination claim with the EEOC on May 18, 1983. In that claim, she alleged discrimination based on her discharge and on the failure to receive the job with the Lake County Jail. R.1 at Ex. "A". After Ms. Goin received her Right-to-Sue letter, she filed a complaint in the district court for the Northern District of Indiana, Hammond Division. In that complaint, she alleged that she had been subject to discrimination in her discharge, but no express mention was made of the jail job. However, her EEOC claim, which contained complaints with respect to both the jail job and her discharge, was appended to the complaint. *Id.* at 2.

Defendants' answers made no mention of the jail job, nor did they mention an affirmative defense that Ms. Goin failed to file the EEOC claim within 180 days after denial of the jail job.[3] R.12 and R.13. However, after discovery, in their trial brief, defendants argued that the claim of discrimination based on the jail job was not properly before the district court because Ms. Goin had not filed an EEOC claim within 180 days of being denied that job. R.31(a) at 2. They also claimed that they had not waived this defense because Ms. Goin's complaint did not raise a claim of discrimination based on the jail job, and it therefore did not come to their attention until discovery. *Id.* at 1. In her trial brief, Ms. Goin argued that her EEOC claim was timely because she had no reason to know that her nonselection was based on her gender at the time she was denied the job. R.33 at 2.

**B. District Court Decision**

**1. Discriminatory Discharge Claim**

The district court concluded that the discharge of Ms. Goin did not constitute an unlawful employment practice within the meaning of Title VII. With respect to Ms.

---

**2.** The two incidents of improper conduct were the "Dear Santa" letter and the crying incident at the juvenile deposition hearing.

**3.** The defendants also did not raise a defense relating to judicial immunity. This court previously ruled that a state-court judge was entitled to immunity from liability for damages in a section 1983 action for alleged sex-based discrimination arising from the dismissal of a probation officer. *Forrester v. White,* 792 F.2d 647 (7th Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 1282, 94 L.Ed.2d 140 (1987). Because the defendants did not raise the defense of judicial immunity, the Supreme Court's eventual disposition of *Forrester* will have no bearing on this lawsuit. *Boyd v. Carroll,* 624 F.2d 730, 732 (5th Cir.1980); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Moreover, we believe the facts of this case are vastly different from the facts in *Forrester.*

Goin's disparate treatment theory, the district court held that she failed to establish a prima facie case because she did not prove that a similarly-situated male employee was given the benefit of more lenient treatment. The court also concluded that Ms. Goin had failed to rebut the defendants' legitimate nondiscriminatory reason for her discharge—violation of the dress and grooming code.

With respect to the plaintiff's disparate impact theory, the court held that the defendant had established a reasonable personnel policy with respect to grooming. Moreover, while the grooming standards were different for men and women, these were "only minor variations contained in an overall, even-handed grooming policy." Order at 15.

### 2. The Jail Job

Before the EEOC, Ms. Goin alleged that she did not receive the teaching job at the Lake County Jail because of sex discrimination. She alleged that, although her qualifications were superior, Mark Helmerich was chosen to fill the jail job. Without specifically addressing the issue of whether this claim had been raised adequately by appending the EEOC claim to the complaint, the court concluded that Ms. Goin's claim with respect to the jail job was time-barred; she had not filed the EEOC charge within 180 days of the date that Mr. Helmerich received the job in October 1982. The district court explained that the 180–day period begins to run "when an employee either knows or should know that an unlawful employment practice has been committed." Order at 17 (quoting *Ortiz v. Chicago Transit Auth.*, 639 F.Supp. 310, 312 (N.D.Ill.1986)). The jail job was filled by a male on October 9, 1982. In the district court's view, the 180–day period began to run on that date because Ms. Goin knew that the position was filled by a male on that date. The court further reasoned that equitable tolling did not apply because Ms. Goin did not allege that she ever inquired into the reasons why she did not receive the jail job after she was informed that Judge Mears appointed Mr. Helmerich to the position.

Accordingly, because Ms. Goin did not make out a claim of sex discrimination with respect to her discharge under either the disparate treatment or the disparate impact theory, and because her jail-job claim was time-barred, the district court entered judgment in favor of the defendants.

### C. *Appellant's Contentions*

#### 1. Disparate Treatment Claim

Ms. Goin argues that she made a prima facie case of sex discrimination. She then argues that, after the burden shifted to the employer to articulate a legitimate nondiscriminatory reason for the rejection, she was able to show that this reason was a pretext. Ms. Goin argues that, "when looked at with the truly discerning eye, it becomes clear that the so-called legitimate nondiscriminatory reason for termination was merely pretextual. Mrs. Goin was fired because, as Judge Mears' superintendent told Mrs. Goin,—*she was a woman.*" Appellant's Br. at 16 (emphasis in original). She also submits that a review of the evidence shows that, although males have been warned about their hair or their manner of dress, not one was ever issued a written reprimand or fired. Ms. Goin argues that Judge Mears' dress code was unwritten and nebulous, and that there was no evidence or finding that the style of one's hair "is not in keeping with the 'conservative image.'" Appellant's Br. at 15.

#### 2. Disparate Impact Claim

Ms. Goin argues that, even though the dress and appearance code was facially neutral, it in fact fell more harshly upon women. She claims that the evidence was clear and unrefuted that no male was ever discharged because of appearance, yet she was terminated for wearing her hair down and wearing excessive makeup.

#### 3. Jail Job

Ms. Goin first argues that her claim of discrimination for the loss of the jail job is not time-barred. She states that her claim of discrimination regarding the jail job was included in the complaint in the district

court, and that, because the defendants did not raise the affirmative defense of the statute of limitations to that claim, the defendants waived the defense that the jail-job claim is time-barred. Moreover, Ms. Goin argues that she was within the 180–day period for filing a claim with the EEOC because she did not know in October 1982 that the jail job had been given to a man because of discrimination against her. She states that it was the loss of her job in January 1982 that signaled the possible existence of gender-based discrimination. Furthermore, she states that it was not until May 1985, in preparation for trial, that she learned that she had been denied the jail job because the sheriff-elect of Lake County had said that "there's no broad that's going to work in this facility." Tr. at 40. She argues that this evidence of discrimination was purposely withheld from her until well after the 180–day filing deadline set forth in Title VII.

## II

### Discussion

#### A. *Disparate Treatment*

■ As the district court correctly noted, in a disparate treatment claim, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court first "set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." *Burdine,* 450 U.S. at 252, 101 S.Ct. at 1093 (footnote omitted). The Court in *Burdine* described the *McDonnell Douglas* allocation as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (citations omitted) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824).

In this case, the district court believed that the plaintiff had failed to make out a prima facie case because she had not demonstrated that similarly-situated male employees were treated differently. Moreover, the court determined that the plaintiff had failed to demonstrate that the defendant's asserted legitimate business purpose was a pretext for discrimination. We believe that the district court was correct in both respects and that therefore its determination that the plaintiff failed to prove intentional discrimination was not clearly erroneous. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). Although some evidence was presented that Ms. Goin was fired because of her gender,[4] there was more than ample evidence to support the district court's determination that she was discharged because she failed to follow her employer's instructions, applied evenhandedly to males and females, with respect to a legitimate business concern.

#### B. *Disparate Impact*

■ To establish a disparate impact case under Title VII, Ms. Goin need not show intentional discrimination. *EEOC v. Madi-*

---

**4.** Ms. Goin testified that she was told by Dr. Billy Williams, superintendent of the Juvenile Center, that "if I had not been a woman, this would never have happened." Tr. at 54. We do not believe that this evidence is sufficient to establish that the district court's decision was clearly erroneous, in light of the ample evidence showing that Ms. Goin was fired for violating the dress and grooming code.

*son Community Unit School Dist. No. 12,* 818 F.2d 577, 587 (7th Cir.1987); *Griffin v. Board of Regents,* 795 F.2d 1281, 1287 (7th Cir.1986). To establish a prima facie case, Ms. Goin must only show that Judge Mears' dress and grooming standards had a substantially disproportionate impact on women. *Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977); *Griffin,* 795 F.2d at 1287. In *Dothard,* the Court set forth the mode of analysis and burdens of proof after a plaintiff establishes a prima facie case:

> Once it is ... shown that the employment standards are discriminatory in effect, the employer must meet "the burden of showing that any given requirement [has] ... a manifest relationship to the employment in question." *Griggs v. Duke Power Co.,* [401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971)]. If the employer proves that the challenged requirements are job related, the plaintiff may then show that other selection devices without a similar discriminatory effect would also "serve the employer's legitimate interest in 'efficient and trustworthy workmanship.'" *Albemarle Paper Co. v. Moody,* [422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975)], quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801 [93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973)].

433 U.S. at 329, 97 S.Ct. at 2727.

The record contains little evidence to suggest that the dress and grooming standards adversely affected women. At the Juvenile Center, the chief hearing referee was a woman; two of the four hearing referees were women; several of the teachers have been women; the head of the Intake Department was a woman; and the Court Executive was a woman. Ms. Goin presented no evidence that Judge Mears' standards had worked a hardship on females or had adversely affected the employment opportunities of females. Therefore, we agree with the district court that Ms. Goin failed to establish a prima facie case of disparate impact.

Furthermore, the record contains ample evidence to support the trial judge's conclusion that Judge Mears' grooming requirements were reasonably related to her "business needs." The evidence presented at trial demonstrated that Judge Mears was very concerned about the public's confidence in the professionalism of government employees. Tr. at 117–18. For that reason, Judge Mears required her male[5] and female employees to adhere to strict dress-code standards. We cannot say that these requirements were not reasonably related to Judge Mears' "legitimate interest[s]." *Dothard,* 433 U.S. at 329, 97 S.Ct. at 2727.

### C. *The Jail Job*

#### 1. Statute of Limitations

■ The district court ruled that Ms. Goin's sex discrimination claim concerning the denial of the job with the Lake County Jail was time-barred. This conclusion was premised on Ms. Goin's failure to file a claim with the EEOC within 180 days after Mr. Helmerich received that job. On October 9, 1982, Ms. Goin knew that she had not received the job. Because the 180–day period begins to run "when an employee either knows or should know that an unlawful employment practice has been committed," the district court ruled that Ms. Goin's EEOC claim filed on May 18, 1983 was too late. Order at 17 (quoting *Ortiz v. Chicago Transit Auth.,* 639 F.Supp. 310, 312 (N.D.Ill.1986)). Furthermore, the district court concluded that Ms. Goin was not entitled to have the commencement of the 180–day limit tolled because Ms. Goin "fail[ed] to allege she ever inquired into the reasons why she did not receive the jail teaching job after she was informed that the judge appointed Helmerich." *Id.* at 18.

We believe that the district court's resolution of this issue was the correct one. This court has recognized the doctrine of equitable tolling of the limitations period. *Vaught v. R.R. Donnelley & Sons,* 745 F.2d 407, 410–11 (7th Cir.1984); *Wolfolk v. Rivera,* 729 F.2d 1114, 1117 (7th Cir.1984).

---

5. For example, Mr. Curtis Robinson, assistant superintendent at the Juvenile Center, testified that he was orally reprimanded for wearing a sweater instead of a suit. Tr. at 128.

*See generally Kontos v. Department of Labor*, 826 F.2d 573, 577 (7th Cir.1987). However, there is no basis for the application of the doctrine here. Ms. Goin, according to her own testimony, originally applied for the jail job. Tr. at 27, 31–33. When she was hired, she was told that she would be assigned temporarily to the Juvenile Detention Center "until the jail position opened up officially." *Id.* at 35. Although she assumed she would "in fact [be] going to go across the street and teach at the Lake County jail," *id.* at 38, she was informed later that "another round of interviews for that position were scheduled." *Id.* This development occurred even though she was already preparing a curriculum for the jail job. *Id.* After the interviews, she was informed that a man, Mark Helmerich, received the job. *Id.* at 40. Rather than make further inquiry, she accepted the advice of the superintendent of the Juvenile Center to "just let it go, these are the kinds of decisions that are made and it's all for the best, just let it go." *Id.* She then remained at the Juvenile Center and "developed a curriculum for Mr. Helmerich as he had no experience in that area...." *Id.* at 41. Under these circumstances, we cannot say that the trial judge erred in concluding that, at that point, Ms. Goin was obligated to make further inquiry. "[F]acts that would support a charge of discrimination were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." *Wolfolk*, 729 F.2d at 1117 (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975)); *see also Wolfolk*, 729 F.2d at 1118 n. 5 (citing with approval *Quintana v. Bergland*, 23 FEP Cases 1489 (D.N.M. 1980) ("thirty-day time limit began to run on date female plaintiff first learned that male whom she considered less well-qualified was hired for a federal government position, not on the date she was told she failed to qualify for position")).

## 2. Waiver

■ Nor do we believe that the defendants waived their right to rely on the limitations period by their failure to assert this defense in their answers. In her complaint filed in the district court, Ms. Goin made no explicit reference to the jail job. However, in paragraph 10 of the complaint, she made the following reference to the EEOC charge: "Plaintiff filed her charge with the Equal Employment Opportunity Commission on May 18, 1983. A copy of said charge of discrimination is attached hereto and made a part hereof as Exhibit 'A'." She now claims, as she did in the district court, that such a reference was sufficient to place her allegation in issue. She relies on Fed.R.Civ. P. 10(c) which states:

(c) Adoption by Reference; Exhibits. Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.

We do not believe Ms. Goin's oblique reference to the EEOC complaint was sufficient to give the court and the defendants adequate notice that Ms. Goin intended to add an entirely new count to her complaint. Rule 10(c) cannot be read in a vacuum. It must be remembered that the principal function of the complaint is to give the court and the opposing party sufficient notice of the allegation to which a response must be made. *Chicago Painters & Decorators Pension Funds v. Karr Bros.*, 755 F.2d 1285, 1287 n. 1 (7th Cir.1985). In the context of a Title VII suit, appending the EEOC charges to the complaint hardly serves as notification that the plaintiff is adding an entirely new count. The EEOC complaint may well have been appended to the complaint if Ms. Goin had brought only the question of her discharge to the district court. Moreover, a Title VII litigant may well reevaluate an initial charge of discrimination at the close of the administrative stage of the proceedings and bring to the district court only the claim or claims which, after the administrative proceedings, appear meritorious. Under these circumstances, we do not believe that Ms. Goin's complaint properly set forth a claim based on the jail job and gave the defend-

**1382**

ants adequate notice that the jail job was a count in the complaint. When the defendants became aware, during discovery, that the plaintiff was making such a claim, they promptly raised the defense. R.31(a) at 1. Therefore, there was no waiver and we must agree with the district court that Ms. Goin's jail-job claim was time-barred.[6]

### Conclusion

Because Ms. Goin failed to prove sex discrimination based on either a disparate treatment or disparate impact theory, we affirm the judgment of the district court as to those claims. Because Ms. Goin failed to file the jail-job charge with the EEOC within 180 days, the district court properly declined to consider the matter on the merits.

AFFIRMED.

---

**6.** Because the district judge resolved the matter of the jail-job claim on the threshold issue of timeliness, he had no reason to determine whether the claim, although not properly set forth in the complaint, was before the court because of the mutual acquiescence of the parties. *See* Fed.R.Civ.P. 15(b). Likewise, we do not feel it necessary to reach the issue. *See generally* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1493 (Supp.1987).