# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2933

KIMBERLY CONNER,

Plaintiff-Appellant,

v.

ILLINOIS DEPARTMENT OF
NATURAL RESOURCES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 03 C 2027—**Michael P. McCuskey**, *Chief Judge.*

_____

ARGUED MAY 3, 2005—DECIDED JULY 1, 2005

_____

Before FLAUM, *Chief Judge*, and KANNE and SYKES,
*Circuit Judges*.

KANNE, *Circuit Judge*. Kimberly Conner brought this
Title VII suit alleging racial discrimination and retaliation
by her employer, the Illinois Department of Natural
Resources ("the Department"). The district court granted
the Department's motion to strike a claim first raised by
Conner in her response to the Department's motion for
summary judgment. The court also granted summary
judgment for the Department on Conner's remaining claim.
We affirm both decisions.

## I.  History

We summarize the facts as alleged by Conner, an African American who was employed by the Department from 1996 to 2003. At all times relevant to this suit, Conner worked as an Office Associate under James Capel, a Caucasian who held the title of Regional Land Manager. In May 2001, Conner applied for a promotion to the position of Office Coordinator, but Capel awarded the position to a Caucasian woman with more experience.

From December 2001 to February 2002, and September 2002 to September 2003, Conner filled in for a retired Office Administrator III, performing the duties of that job in addition to her own work. Conner submitted a written pay variance form to Capel, but she was not given temporary assignment pay for the extra work. Capel did, however, grant a Caucasian employee temporary assignment pay for covering the duties of another retiree.

Conner had a confrontation with Capel in January 2002 after he denied her application for tuition reimbursement. Conner told Capel that his denial of her application was racist and that the way he treated minorities was blatant racism. Capel initiated disciplinary proceedings against Conner for what he believed to be insubordination, but, apparently because of her seven-month leave of absence, no disciplinary action was taken against Conner.

In October 2002, Conner applied for another promotion, this time to the position of Office Administrator III. The position was ultimately filled by a Caucasian applicant who, according to certified interviewer Sabrina Janssen, had scored the highest of the three applicants (including Conner) on a *Rutan* interview.[1] On November 1, 2002,

---

[1] *See Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990) (holding that promotions based on political affiliation or support violate

(continued...)

Janssen gave her recommendation as to which candidate should be hired. The candidate was notified in December 2002 that she received the position.

Conner filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 1, 2002. That complaint alleged racism within the Department, specifically stating that Conner had been unfairly passed over for a promotion in 2001 and denied temporary assignment pay for taking over a retiree's duties from December 2001 through January 2002. On November 6, 2002, the EEOC issued a Dismissal and Notice of Rights to Conner, giving her 90 days to file a lawsuit against the Department.

Conner filed a two-count complaint in the district court on February 7, 2003, alleging violations of Title VII of the Civil Rights Act. Count I set forth a claim for "race discrimination," alleging that Conner was denied promotions because of her race and that Capel created a racially hostile, abusive, and offensive work environment. Count II stated a claim for "retaliation," alleging that the Department had retaliated against Conner for complaining to Capel about racial discrimination. Conner attached her November 1, 2002, EEOC charge as an exhibit to her complaint.

---

[1] (...continued)
public employees' First Amendment rights). The Department interviewed candidates for the Office Administrator III position with standardized questions on knowledge and experience, education, communication, and affability. Janssen, a Human Resources Specialist, then scored the answers of each candidate. There is some dispute as to how exactly Janssen scored the interviews; Conner claims that no "desired" answers with which to compare the candidates' answers existed prior to the interviews, and that the *Rutan* scores were simply a pretext for racial discrimination. This issue is not relevant to our analysis.

The Department moved for summary judgment in February 2004, arguing that Conner's claim regarding the 2001 non-promotion was time-barred because it had been brought more than 300 days after the alleged discrimination, and that the claim regarding the 2002 non-promotion was beyond the scope of Connor's right-to-sue letter. It also argued that Conner could not show that she had been the victim of a hostile work environment. In her response to the motion for summary judgment, Conner conceded that the 2001 non-promotion was based upon seniority and the terms of the Department's collective bargaining agreement with its employees, and she did not address her claim of a hostile work environment. She did, however, allege that she was treated differently from similarly situated white employees with respect to temporary assignment pay and that her claim regarding the 2002 non-promotion was proper.

The court granted the Department's motion to strike the portions of Conner's response dealing with temporary assignment pay, finding that this allegation was improperly raised for the first time in her response. The court also agreed with the Department that the 2002 non-promotion issue was outside the scope of the EEOC right-to-sue letter. Finally, the court granted the Department's motion for summary judgment on Count II, the retaliation claim, finding no evidence that Conner had suffered any adverse employment actions because of the complaints she made to Capel.

## II. Analysis

Conner's first argument on appeal is that the district court improperly struck the portions of her response to the Department's motion for summary judgment related to temporary assignment pay. Conner argues that, under the federal system of notice pleading, she was not required to

set forth the specific bases of her claims in her complaint. She further argues that the Department should have been aware that temporary assignment pay would be an issue in this case from the time it was served with her complaint, because the EEOC charge indicating that she had been unfairly denied the extra pay was attached to the complaint as an exhibit.

Conner is correct in stating that she was not required to set forth specific facts and legal theories of her case in her complaint. *See* Fed. R. Civ. P. 8; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998). "Pleading is no longer a procedural game of skill at which counsel must be adept in order to insure the decision of his case on its merits." *Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 811 (7th Cir. 1973). But pleading is still vitally important to inform the opposing party of the grounds upon which a claim rests; a complaint is adequate only if it "fairly notifies a defendant of matters sought to be litigated[.]" *See id.*; *accord Wislocki-Goin v. Mears*, 831 F.2d 1374, 1381 (7th Cir. 1987) ("It must be remembered that the principal function of the complaint is to give the court and the opposing party sufficient notice of the allegation to which a response must be made.")

Conner says that the Department was notified of the temporary assignment pay issue by way of the EEOC charge attached to her complaint. We considered and rejected this argument in *Wislocki-Goin v. Mears*. The plaintiff in that case appended her EEOC charges—which alleged discrimination based on discharge of one job and failure to receive another—to a complaint of sexual discrimination, but her complaint itself stated a claim based only on the discharge. *Wislocki-Goin*, 831 F.2d at 1377. We held that "appending the EEOC charges to the complaint hardly serves as notification that the plaintiff is adding an entirely new count." *Id.* at 1381. Conner's raising of the temporary assignment pay issue for the first time in her

response to a motion for summary judgment thus amounted to adding a new count of discrimination to the lawsuit, or amending her original complaint. We review the district court's denial of leave to amend a complaint only for abuse of discretion. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).

Conner points out that the Department should have become aware during discovery that the temporary assignment pay issue would be litigated: Conner mentioned temporary assignment pay (along with many other issues) in her interrogatory dated August 28, 2004, and Capel was asked about his authority to grant or deny temporary assignment pay in his March 19, 2004, deposition. Both of these dates are after the district court's July 21, 2003, deadline for amending the pleadings. In addition, Conner never filed a motion for leave to amend her complaint by adding the temporary assignment pay claim, so the form of her "request" was wrong. *See Shanahan*, 82 F.3d at 781 ("[T]he form of the request [to amend the complaint]—a passing reference in . . . [plaintiff's] response to defendants' motion for summary judgment—was improper."). It was well within the district court's discretion to deny Conner leave to amend her complaint by refusing to consider her temporary assignment pay claim. *Cf. Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) (discussing negative consequences that occur if the liberal federal pleading rules are employed to allow plaintiffs to ascertain bases of their claims at the last minute, including wasted resources and prejudicial delay).

We are left with Conner's second argument: that the district court improperly rejected her claims of discrimination based on her non-promotion in 2002. There are several prerequisites for bringing a Title VII claim. A plaintiff must file a charge with the EEOC detailing the alleged discriminatory conduct within the time allowed by statute, and the EEOC must issue a right-to-sue letter. *Hentosh v. Herman*

*M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). In addition, claims brought in judicial proceedings must be within the scope of the charges filed with the EEOC; "[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush*, 966 F.2d at 1110. Whether the issue of Conner's 2002 non-promotion was within the scope of her EEOC charge is a question of law, which we review *de novo. See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864-66 (7th Cir. 1985); *accord Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998).

The complaint filed in the district court and the charge filed with the EEOC must, at a minimum, describe the same circumstances and participants. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996). This gives the EEOC a chance to investigate the allegedly discriminatory conduct and to seek voluntary compliance or conciliation without a lawsuit. *Babrocky*, 773 F.2d at 863. In Conner's case, it would have been impossible to describe the conduct related to her December 2002 non-promotion in her EEOC charges dated November 1, 2002. There was no way for the EEOC to undertake preliminary investigation as contemplated by Title VII's statutory design. The non-promotion was necessarily outside the scope of the EEOC charges, and the district court was correct in rejecting Conner's claims based upon it.

### III.  Conclusion

The district court properly refused to consider both the temporary assignment pay and 2002 non-promotion issues. Conner offered no other arguments in response to the Department's motion for summary judgment. Thus, she cannot show that she was subjected to an adverse employment action as required to establish a prima facie discrimi-

nation case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Summary judgment for the Department is AFFIRMED.

A true Copy:

Teste:

_____
***Clerk of the United States Court of Appeals for the Seventh Circuit***