In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3278

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

*v.*

LEE'S LOG CABIN, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05 C 507—**Barbara B. Crabb**, *Chief Judge.*

ARGUED APRIL 4, 2007—DECIDED OCTOBER 6, 2008

Before KANNE, WILLIAMS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. The Equal Employment Opportunity Commission ("EEOC") filed suit against Lee's Log Cabin restaurant in Wausau, Wisconsin, claiming it violated the Americans with Disabilities Act ("ADA") when it refused to hire Korrin Krause Stewart for a waitstaff position because she was HIV-positive. After Log Cabin moved for summary judgment, the EEOC switched

gears and claimed Log Cabin did not hire Stewart because she had AIDS. The district judge thought the shift in factual basis was consequential and came too late. A disability attributed to AIDS, the court held, is "not synonymous" with a disability attributed to being HIV-positive. Addressing the claim as originally configured, the court held the EEOC failed to make a threshold showing that Stewart was a "qualified individual with a disability" under the ADA because it had not produced evidence that being HIV-positive substantially limited one or more of Stewart's major life activities as required to satisfy the ADA's definition of "disability." The court entered summary judgment for Log Cabin, and the EEOC appealed.

We affirm, although on slightly different grounds. The district court was well within its discretion in refusing to entertain the EEOC's belated attempt to reconfigure its claim. We need not address whether HIV and AIDS are synonymous for all purposes under the ADA or whether being HIV-positive (as distinct from having AIDS) is a "disability" under the statute. The EEOC's failed attempt to substitute factual premises left an empty record on whether Stewart's HIV infection limited one or more of her major life activities, and for that reason summary judgment was appropriate. In addition, Stewart was not a "qualified individual" under the ADA because the job description for wait-staff positions at Log Cabin required the ability to lift 25-30 pounds multiple times during a shift, and she indicated on her application that she had a 10-pound lifting restriction that could not be accommodated.

## I. Background

Korrin Krause Stewart was born with human immuno-deficiency virus ("HIV") but was not diagnosed until she was fourteen years old. Shortly after diagnosis, she learned her HIV already had developed into acquired immuno-deficiency syndrome ("AIDS"). In March 2004, when she was 18, Stewart responded to a newspaper ad for a wait-staff position at Lee's Log Cabin, a restaurant in Wausau, Wisconsin. Stewart was aware from the job description that the restaurant's wait-staff had to lift between 25 and 30 pounds multiple times during a shift; she wrote on her application that she had a lifting restriction of 10 pounds. The next question on the application asked whether any accommodations could be made so that she could perform all of the required job duties, and Stewart indicated "no." Stewart maintains she verbally told Log Cabin's assistant manager, Curtis Zastrow, that her lifting restriction was temporary; Zastrow denies she said anything about the restriction being temporary.

A month went by and Stewart heard nothing from Log Cabin, so she returned to the restaurant. Zastrow told her the owner, Dean Lee, who was the decision-maker with respect to new hires, was out of town. Zastrow also asked Stewart if "she was the girl from Quality Foods." That question was prompted by a lawsuit Zastrow had read about in the local paper. In 2002 the EEOC reached a settlement on Stewart's behalf stemming from an allega-tion that her then employer, Quality Foods, fired her when it learned she was HIV positive. Stewart confirmed she had worked at Quality Foods and then asked to revise

her Log Cabin application. Zastrow retrieved it, and Stewart noticed that "HIV+" was written on the front of the application; Zastrow acknowledged he had made this notation. Lee eventually reviewed Stewart's application and discussed the HIV notation with Zastrow. Lee decided not to hire Stewart because she was unable to lift more than 10 pounds and lacked waitressing experience.[1] At the time Log Cabin employed two waitresses who had no prior waitressing experience before being hired, in addition to one waitress who could not lift heavy objects over her head.

The EEOC filed suit alleging Log Cabin violated the ADA, 42 U.S.C. § 12101 *et seq.*, by failing to hire Stewart "because it learned that she was HIV positive." Stewart actually had AIDS, but there was no mention of that until the EEOC responded to Log Cabin's motion for summary judgment. At that point (about a month before trial) the EEOC filed affidavits from Stewart and her physician discussing how AIDS (or in some instances "HIV/AIDS") affected Stewart's life activities. Although the complaint alleged Log Cabin discriminated against Stewart because she was HIV-positive—*not* because she had AIDS—the EEOC presented no evidence about how being HIV-positive alone affected Stewart. Moreover, Stewart's affidavit did not provide any information about her limitations and symptoms at the time she applied for the wait-staff position in 2004, focusing instead on her symp-

---

[1] The owner never interviewed Stewart, although he knew her as a frequent restaurant customer.

toms as they existed at the time she signed the affidavit in 2006. Also, the EEOC submitted the affidavit from Stewart's physician even though the agency had failed to timely disclose its expert and/or treating physicians—a violation of the district court's pretrial order.

The district court faulted the EEOC for its eleventh-hour attempt to shift the factual basis of the claim. Switching the disability from HIV to AIDS was a "gross departure from what [the EEOC] alleged in the initial stages of this lawsuit and it comes too late," the court held. Because HIV and AIDS "are not synonymous" for purposes of the ADA, the judge disregarded the affidavits from Stewart and her physician. This left an evidentiary void; the judge held that because the EEOC "adduced no evidence regarding the effect of HIV on any of Stewart's major life activities," the agency had failed to make a threshold showing that Stewart's HIV-positive status met the statutory definition of "disability." Even if the AIDS claim were properly before the court, the judge held, there was no evidence that Log Cabin knew Stewart suffered from AIDS. *See Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995) ("[A]n employer cannot be liable under the ADA . . . when it indisputably had no knowledge of the disability."). Finally, the judge said it was "questionable" whether Stewart was a "qualified individual" under the ADA. The court entered summary judgment for Log Cabin and the EEOC appealed.

## II. Discussion

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable

to the nonmoving party. *Healy v. City of Chicago*, 450 F.3d 732, 738 (7th Cir. 2006). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We may affirm a judgment on any ground supported in the record "so long as that ground was adequately addressed in the district court and the nonmoving party had an opportunity to contest the issue." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005).

The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a); *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 448 (7th Cir. 2001). To prevail on an ADA claim, the plaintiff must show "(1) he is 'disabled'; (2) he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Furnish*, 270 F.3d at 448. The ADA defines "disability" as follows:

> The term "disability" means, with respect to an individual—
>
> > (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> >
> > (B) a record of such an impairment; or
> >
> > (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). This case implicates only the first of these definitions.

"[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). This is because the statute requires the disability issue to be determined by reference to "an individual" and whether a given physical or mental impairment "substantially limits" the "major life activities of such individual*." Id.*; *see also* § 12102(2)(A). Major life activities include, but are not limited to, "functions such as caring for [one's self], performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

The EEOC complicated the individualized "disability" inquiry in this case by attempting, extremely late in the litigation, to refashion its claim as one based on AIDS rather than HIV. In *Bragdon v. Abbott*, 524 U.S. 624, 633-37 (1998), involving an ADA claimant who was HIV-positive but had not yet developed AIDS, the Supreme Court described the typical medical progression of an initial HIV infection into the AIDS virus. The Court held that HIV satisfies the statutory definition of a "physical impairment" and went on to conclude that the claimant's HIV infection substantially limited one of her major life activities—specifically, reproduction. *Id.* at 641-42. This conclusion was based on uncontroverted testimony from the claimant "that her HIV infection controlled her decision not to have a child." *Id.* at 641.

Here, the district court disallowed the EEOC's attempt to substitute AIDS for HIV as the factual basis of its

claim, holding, based on *Bragdon,* that the two are "not synonymous" for purposes of the ADA. The judge thought the EEOC's substitution of AIDS for HIV as the operative disability came "too late"—a month before trial and in its response to Log Cabin's summary judgment motion. The judge therefore disregarded the affidavits submitted by Stewart and her physician that described the effect of AIDS—not HIV alone—on Stewart's major life activities.

The EEOC argues on appeal that HIV and AIDS are the same disease when a person has AIDS, and therefore the district court abused its discretion by refusing to consider the affidavits. Whether HIV and AIDS are synonymous for all purposes under the ADA need not be decided in this case. We note only that they are not synonymous for the limited purpose relevant to the determination at issue here—whether to entertain the EEOC's belated alteration of the factual basis of its claim—and the district court's judgment in this regard was manifestly reasonable. The very first mention of AIDS came in the EEOC's response to Log Cabin's motion for summary judgment, and the court was entitled to regard this as "too late" to change so basic a factual premise in the case.[2] *See Conner v. Ill. Dep't of Natural Res.*, 413 F. 3d 675, 679 (7th

---

[2] The district court might have seen this case differently had the EEOC complied with the pretrial order and timely disclosed its medical expert, which presumably would have introduced this new information about Stewart's condition much earlier in the case. The district court did not, however, explicitly invoke the EEOC's discovery violation as a reason to disregard the physician's affidavit, and neither do we.

Cir. 2005) (upholding district judge's refusal to consider a claim raised for the first time in a response to summary judgment); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (holding plaintiff "'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment'" (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996))).

Federal pleading rules require the plaintiff to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The EEOC's complaint gave notice that its ADA claim was grounded on discrimination against Stewart because she was HIV-positive, *not* because she had AIDS. This was not a mere adjustment in the legal theory of the case, as the EEOC contends; it was a major alteration of "what the claim is" and the "grounds upon which it rests."

In *Bragdon*, the Supreme Court described the typical progression of an HIV infection; its initial stage, the Court noted, usually lasts about three months and is character- ized by "Mononucleosis-like symptoms" that "emerge between six days and six weeks after infection" and "abate within 14 to 21 days." 524 U.S. at 635. The infection then "enters what is referred to sometimes as its asymp- tomatic phase," although the Court said "[t]he term is a misnomer, in some respects, for clinical features persist throughout, including lymphadenopathy, dermatological disorders, oral lesions, and bacterial infections." *Id.* The

Court noted that "in most instances, this stage lasts from 7 to 11 years" before developing into AIDS. *Id.* The ADA's applicability depends upon whether the claimant's asserted impairment is a "disability" within the meaning of the statute; this, in turn, depends upon whether the asserted impairment "substantially limits one or more of the major life activities" of the claimant. Given the symptomatic variances in the different stages of this disease, whether an ADA claimant was HIV-positive or had full-blown AIDS at the time of the alleged discrimination is highly relevant to this foundational aspect of the claim. The EEOC has not explained why it waited until its response to summary judgment, a month before trial, to disclose that Stewart had AIDS and that *this* was the actual basis for the discrimination alleged in the case.[3] *See Conner*, 413 F.3d at 679 (While

---

[3] Our dissenting colleague notes that "persons with AIDS do not cease to be HIV positive; once someone is HIV positive or is infected with HIV, she is always HIV positive." Dissent, at p. 17. This is true but beside the point. No one is suggesting that Stewart ceased being HIV-positive once she developed AIDS. Rather, our opinion holds only that because (as *Bragdon* discusses) the physical effects of AIDS are different—more severe—than those associated with being HIV-positive, the district court was within its discretion to reject the EEOC's late attempt to substitute AIDS for HIV as the factual basis for Stewart's ADA claim. The dissent also notes that "having AIDS is not inconsistent with being HIV positive." *Id*. This is also true, but being HIV-positive is *not* the same as having AIDS, as the Supreme Court discusses at length in *Bragdon.* And that's the

(continued...)

pleading is not a "'game of skill,'" it nevertheless is "vitally important to inform the opposing party of the grounds upon which a claim rests; a complaint is adequate only if it 'fairly notifies a defendant of matters sought to be litigated.'" (quoting *Sundstrand Corp. v. Standard Kollsman Indus., Inc.,* 488 F.2d 807, 811 (7th Cir. 1973))).

It does no good for the EEOC to suggest, alternatively, that the district court should have permitted an amendment to the complaint under Rule 15(b) of the *Federal Rules of Civil Procedure.* Rule 15(b) concerns amendments that may be permitted in order to conform the pleadings to the evidence submitted at trial, which is not at issue

---

[3] (...continued)

material point as to notice here. Log Cabin and the district court did not know until a month before trial that Stewart had AIDS and that the EEOC was actually basing Stewart's disability claim on her AIDS symptoms. The dissent also asserts that "[i]t is undisputed that at all relevant times, Stewart was not only HIV positive . . . but she also had AIDS. So the allegation in the complaint that Stewart was 'HIV positive' is consistent with the fact that she has AIDS." Dissent, at p. 18. No, it's not, but the opposite is true. That is, an allegation that Stewart has AIDS is consistent with an allegation that she was HIV-positive, but not vice versa. If a person has AIDS she is necessarily HIV-positive; but a person who is HIV-positive does not necessarily have AIDS. It is undisputed that at the time Stewart applied for the job and throughout this litigation, Log Cabin knew that Stewart was HIV-positive, *not* that she had AIDS. That it is *now* known and undisputed that she actually has AIDS does not excuse the EEOC's late introduction of that information into this litigation.

here. In any event, the EEOC never sought leave to amend its complaint.[4]

Accordingly, the district court did not abuse its discretion in disregarding the affidavits submitted by Stewart and her physician describing the effect of AIDS on her life activities. This meant the record was silent about the effect of HIV on Stewart's life activities, leading necessarily to the court's conclusion that the EEOC had not made a threshold evidentiary showing of a covered disability within the meaning of the ADA. The agency argues this was error under *Bragdon* because a reasonable juror could conclude that Stewart's HIV infection imposed substantial limitations on her reproduction, a

---

[4] It is unclear why the EEOC did not plead AIDS in its complaint or reference it in the parties' Rule 26(f) report, although the most logical explanation is that there is no evidence Log Cabin was aware Stewart had AIDS. That Log Cabin did not know Stewart had AIDS is an alternative basis to affirm, assuming the EEOC's late attempt to reconstitute the claim should have been allowed. The dissent faults this conclusion, noting that "we have never held that an employer who acts improperly on the basis of a disability need know the extent to which the disability has progressed to be held liable." Dissent, at p. 22. Our opinion does not suggest that this is required. We hold only that the EEOC's belated attempt to substitute AIDS for HIV as the basis for this ADA claim came too late. This is because the threshold "disability" determination turned on the extent to which Stewart's impairment limited her major life activities, and an AIDS sufferer's symptoms (and their effect on her major life activities) differ from those of someone who is HIV-positive but has not yet developed AIDS.

major life activity. This is a misreading of *Bragdon*, which was based on the "unchallenged" testimony of the ADA claimant in that case that "her HIV infection controlled her decision not to have a child." *Bragdon*, 524 U.S. at 641. The Supreme Court emphasized that because the claimant's testimony was uncontroverted in this regard, the Court "need not address the second question presented, *i.e.,* whether HIV infection is a *per se* disability under the ADA." *Id.* at 642. The EEOC's argument here essentially asks us to hold that HIV is a per se disability under the ADA because of its effect on reproduction.[5] In light of the qualifying language in *Bragdon* and the Court's holding in *Sutton* that the question of disability under the ADA "is an individualized inquiry," 527 U.S. at 483, we decline to adopt such a rule.

This brings us to the question whether Stewart was a "qualified individual" under the ADA. *See Weiler v.*

---

[5] In her affidavit Stewart states she was married in January 2005, became pregnant in August 2005, and on March 22, 2006, gave birth to a baby boy who has tested negative for HIV. The affidavit describes the precautions she undertook and difficulties she encountered during pregnancy because of her AIDS, and steps she and her husband (who also has AIDS) have taken since the birth of their child to avoid future pregnancies. Because the district court was within its discretion to disregard this affidavit—and the one submitted by Stewart's doctor—this evidence lies outside the record. (We also note again that the time period covered by this section of Stewart's affidavit postdates the time period at issue in this case.) Necessarily then, the EEOC is asking for a per se rule that HIV is a disability under the ADA because of its effects on reproduction.

*Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) (stating plaintiff bears burden of proof on this point). Log Cabin argues she was not, and this is an additional or alternative basis upon which to affirm. A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The individual must also "satisf[y] the requisite skill, experience, education and other job-related requirements of the employment position." 29 C.F.R. § 1630.2(m).

Log Cabin required its wait-staff employees to lift, transport, and carry objects weighing from 25 to 30 pounds up to 20 or more times per shift, and Stewart indicated on her job application that she could not lift more than 10 pounds. The EEOC claims Log Cabin's heavy-lifting requirement is pretextual, and as proof points to one waitress at the restaurant who could not meet the requirement. The agency overstates this waitress's limitations; she *could* handle the lifting required by the job, she simply could not lift over her head. Log Cabin was able to accommodate her "no overhead lifting" limitation. Stewart, on the other hand, answered "no" to the application question whether accommodations could be made to overcome her lifting restriction. *See DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998) (holding plaintiff "faces an insurmountable problem" because she proposed no accommodation that would permit her to perform the production-worker job). The factual dispute over whether the lifting restriction was temporary or

permanent was thus immaterial.[6] Accordingly, Stewart was not a qualified individual under the ADA, and for this additional reason, summary judgment in favor of Log Cabin was appropriate.

AFFIRMED.

WILLIAMS, *Circuit Judge*, dissenting. Because I would reverse the district court's grant of summary judgment to Log Cabin, I respectfully dissent. The EEOC alleged in its complaint that Log Cabin violated the ADA when it refused to hire Stewart upon learning "that she was HIV positive," and then submitted evidence regarding the effect that HIV (which had progressed to the AIDS stage) had on Stewart's life activities. The district

---

[6] The dissent offers an explanation for Stewart's "no" answer to the accommodation question on the job application, suggesting that "if [Stewart] believed the [lifting] restriction would not be an issue by the time she began the position, there would be no reason for the Log Cabin to have to 'accommodate' her." Dissent, at p. 23. But an employer is entitled to take at face value a job applicant's "no" answer to a question about whether a disability can be accommodated. Stated differently, Stewart's subjective reasons for answering "no" to the accommodation question cannot be imputed to Log Cabin.

court struck that evidence on the basis of its judgment that a disability claim based on AIDS is a "gross departure" from a claim based on "being HIV positive." Not only does this distinction improperly focus on the name of Stewart's disability rather than its effects on her life activities, but it also is erroneous and therefore unreasonable. A person diagnosed with AIDS is also HIV positive. The majority upholds the district court's judgment as manifestly reasonable because it views the EEOC as having belatedly refashioned its claim from one involving HIV to one involving AIDS. In my view, however, the EEOC did not change its claim, and the evidence submitted to demonstrate that Stewart is disabled should not have been disregarded on the basis of a distinction that has no meaning in this case.

Once a person is infected with HIV (or is "HIV positive") that person remains HIV positive until his death. "HIV infection" (which is often shortened to "HIV" or "HIV disease") refers to a single disease that is characterized by the progressive loss of CD4+ lymphocytes (or white blood cells). The Supreme Court has described the disease as having three stages—acute, chronic, and AIDS. *See generally Bragdon v. Abbott*, 524 U.S. 624, 633-37 (1998) (describing the progression of HIV infection). The Center for Disease Control now recognizes five, rather than three, stages of HIV infection. *See* Center for Disease Control, *Living With HIV/AIDS*, http://www.cdc.gov/hiv/resources/ brochures/livingwithhiv.htm#q2 (last visited August 31, 2008).

AIDS is the final stage of HIV, but there is no single test to diagnose AIDS. *Id.* Usually AIDS is diagnosed when a

person's CD4+ cell count drops below 200, but sometimes persons with higher cell counts are diagnosed with AIDS if they have certain diseases such as tuberculosis or pneumocystis carinii pneumonia (PCP). *See id.*; *Bragdon*, 524 U.S. at 633-36; *Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1262 n.3 (4th Cir. 1995) ("AIDS is the end-stage of HIV infection and is characterized by the presence of HIV and one or more 'opportunistic' infections"). In other words, an AIDS diagnosis can mean different symptoms for different people, and it does not necessarily represent a change in debilitation from the earlier stages of HIV. Rather, individuals suffer from the effects of HIV/AIDS at various stages in different ways.

HIV and AIDS are not separate diseases. Importantly, persons with AIDS do not cease to be HIV positive; once someone is HIV positive or is infected with HIV, she is always HIV positive. Nor do persons with AIDS no longer suffer from HIV infection.

Therefore, having AIDS is not inconsistent with being HIV positive, nor is it a new "cause of action" under the ADA. By the time Stewart applied for a position as a waitress at Log Cabin, she was both HIV positive and had AIDS. Though she did not reveal this to Log Cabin at the time she applied for the job, a manager at the restaurant discovered she was infected with HIV and wrote "HIV +" in large capital letters across her application. Stewart was not hired. Pursuant to the federal notice pleading standard, the EEOC's complaint, which merely initiated this litigation, provided a short and plain statement of the grievance: Log Cabin refused to hire Stewart

"because it learned she was HIV positive." Any facts consistent with the complaint's allegations could be proved later and did not require an amended complaint. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512-14 (2002); *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2006).

To meet its threshold burden of proving that Stewart is disabled as defined by the ADA, the EEOC submitted evidence that Stewart's condition (which the affidavits refer to as "AIDS" or "HIV/AIDS") substantially limits one or more of her major life activities. The district court acknowledged that Stewart's disease (AIDS) caused serious limitations on a number of major life activities, including self-care, eating, and reproduction. But, inexplicably, it held that this evidence only pertained to the "AIDS claim" and could not be considered towards the "HIV claim," and therefore that there was no evidence that Stewart's HIV substantially impaired any major life activity.

This, to me, is illogical. It is undisputed that at all relevant times, Stewart was not only HIV positive (meaning she had HIV—the virus), but she also had AIDS. So the allegation in the complaint that Stewart was "HIV positive" is consistent with the fact that she has AIDS. It follows that the evidence regarding the impact that "HIV/AIDS" or AIDS has on Stewart's life activities describes the impact that HIV has on Stewart's life activities. Although the district court appears to have thought it necessary for Stewart to submit evidence of how HIV "alone" affects her life in order to provide evidence consistent with her complaint, that is impossible in Stewart's case. The effects of AIDS on her life activities are

not severable from the effects of HIV. Put another way, proof that Stewart's major life activities are affected by AIDS is not different from proof that her major life activities are affected by HIV.

Indeed, whether one calls Stewart's disease "HIV" or "AIDS" or "HIV/AIDS" misses the point of the ADA. "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. pt. 1630, app., § 1630.2(j); *see Bragdon*, 524 U.S. at 637 (holding that the "HIV infection satisfies the statutory and regulatory definition of a physical impairment during every stage of the disease" but leaving it to courts to make a disability determination based on individual cir- cumstances); *see also* 29 C.F.R. pt. 1630, app. (note dis- cussing § 1630.2(j)) ("HIV infection [is] inherently sub- stantially limiting."). What matters in analyzing whether an individual has a "disability" for purposes of the ADA is the impact of that condition. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 483 (1999); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).

Because the EEOC presented evidence demonstrating that Stewart's disease—regardless of whether her disease is called "HIV," "HIV/AIDS" or "AIDS"—substantially limits one or more of Stewart's major life activities, it met its burden of demonstrating that Stewart is "disabled" for purposes of the ADA. The names of the stages of this particular disease (HIV) are inconsequential; what matters is the impact of the disease on the individual. The

district court erred in refusing to consider that evidence on the basis that different names were used to describe Stewart's disability.

Despite this evidence, the majority opinion affirms the grant of summary judgment to Log Cabin on the rationale that the district court's determination that the EEOC was belatedly altering the factual basis of its claim was "manifestly reasonable." But I do not see how the EEOC was trying to "alter" its claim—that Stewart was discriminated against because she was HIV positive—by submitting evidence of how Stewart's HIV/AIDS substantially limits her major life activities.

As an initial matter, the evidence that the EEOC submitted to prove Stewart is "disabled" for purposes of the ADA is consistent with her complaint, so the EEOC was not changing its claim. To the extent there is a difference between HIV and AIDS (not all people with HIV have AIDS), the majority's focus on nomenclature overlooks whether that difference is consequential in this case. Even if all people with HIV do not have AIDS, it is undisputed that Stewart has both. In light of that, reliance on the difference between HIV and AIDS to disregard evidence regarding the effect that HIV has on Stewart's life is unreasonable.

Furthermore, this is hardly a situation where the plaintiff attempted to reconfigure its claim, or where the complaint failed to give the defendant fair notice of the plaintiff's claim. The EEOC did not allege in its complaint that Stewart was fired because she had a cold and then provide evidence that she had cancer. That, to me, would

be more similar to the cases cited by the majority for the proposition that a court need not entertain belated factual alterations. *See Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (alleging disparate treatment based on the failure to receive pay for extra work is different from alleging discrimination based on the denial of a promotion or a hostile work environment claim); *Grayson v. O'Neill*, 308 F.3d 808, 817-18 (7th Cir. 2002) (a retaliation claim based on an EEOC complaint filed on one date is distinct from a retaliation claim based on another EEOC complaint filed two months later). Rather, AIDS is one stage of HIV (similar to what "stage four cancer" might be to "cancer"), and HIV is a disease that can render someone "disabled" at all stages of the disease. AIDS is not a "substitute" disease for HIV.[1]

The majority relies on *Bragdon* to contend that the physical effects of AIDS are different—more severe—than those "associated with" being HIV positive. But *Bragdon* does not characterize AIDS as distinct from being HIV positive. *See, e.g., Bragdon*, 524 U.S. at 636 ("During [the AIDS] stage, the clinical conditions *most often associated with HIV*, such as pneumocystis carninii pneumonia, Kaposi's sarcoma, and non-Hodgkins lymphoma, tend to

---

[1] To the extent that timing is an issue, it bears noting that the EEOC's summary judgment response (with the affidavits) was submitted a month before trial due to a mistake by *Log Cabin*, who failed to properly serve the EEOC with its motion for summary judgment until April 21, 2006 (well past the court's deadline for filing dispositive motions) at which point the district court was forced to revise its entire briefing schedule.

appear.") (emphasis added). Rather, the Supreme Court described the course of illness for a person who is HIV positive as having three stages—acute HIV, chronic HIV, and AIDS.

The majority also concludes that because Log Cabin did not know Stewart had AIDS, she could not have relied on evidence regarding the impact of AIDS on her life activities even if the district court had considered it. But we have never held that an employer who acts improperly on the basis of a disability need know the extent to which the disability has progressed to be held liable. *See Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 520 (7th Cir. 2003) ("[L]iability for disability discrimination does not require professional understanding of the plaintiff's condition. . . . It is enough to show that the defendant knew of symptoms raising an inference that the plaintiff was disabled."); *cf. Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995) (an employer who has *no knowledge of a disability whatsoever* cannot be found to have been motivated by that disability).

This is not a case where Log Cabin had no knowledge of Stewart's disability. It is undisputed Log Cabin knew she was HIV positive. And there is evidence linking Log Cabin's knowledge of Stewart's disability to its adverse action (Log Cabin prominently wrote "HIV+" on her employment application), which distinguishes this case from the rule of *Hedberg. Hedberg* does *not* stand for the proposition that an employer who knows of a disability must properly diagnose that disability before it can be held liable for acting on the basis of it. So I do not see

why the EEOC would need to demonstrate that Log Cabin knew her HIV infection had progressed to its final stage in order to hold Log Cabin liable for acting on that knowledge. Indeed, Log Cabin maintains that its reasons for not hiring Stewart had nothing to do with her disability.

This brings me to whether the EEOC demonstrated that Stewart was qualified for the position. Log Cabin asserts on appeal that it is an absolute requirement for waitresses to be able to lift 25-30 pounds. However, that assertion is undermined by Log Cabin's owner, who when asked at a deposition whether having a lifting restriction "eliminates" someone from being employed as a waitress at the restaurant, responded "not necessarily." Therefore, there is a material dispute as to whether the lifting requirement is an absolute requirement of the waitress job for which Stewart applied.

Even assuming the lifting requirement is an absolute one, there is a material dispute as to whether Stewart was not qualified since her lifting restriction was only temporary. Though she noted on her application that there was no way Log Cabin could accommodate her inability to lift more than ten pounds, she also contemporaneously told Log Cabin that her inability to do so was temporary. Indeed, that would explain why she wrote on her application that there was no accommodation for her restriction. If she believed the restriction would not be an issue by the time she began the position, there would be no reason for the Log Cabin to have to "accommodate" her. Therefore, a reasonable jury could find that Stewart was qualified for the job.

It is unfortunate to me that the district court's focus on nomenclature obscured the real inquiry in this case, which is whether Log Cabin discriminated against Stewart. Indeed, I wonder if this case would have fared differently if the last stage of HIV were called "Stage 5 HIV" instead of "AIDS." Because there is no meaningful difference between a discrimination claim based on being "HIV positive" and a discrimination claim based on "AIDS" when the claimant has AIDS, and because I do not believe it is possible for a person diagnosed with AIDS to provide evidence of how HIV *alone* affects her major life activities, the district court abused its discretion when it disregarded evidence based on these assumptions. Had the district court considered the evidence of Stewart's disability, the EEOC would have met its threshold burden of demonstrating that Stewart was disabled for purposes of the ADA. I would reverse.