In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 09-1527 & 09-1537

RAYMOND MOORE,

*Plaintiff-Appellant,*

*Cross-Appellee,*

*v.*

VITAL PRODUCTS, INCORPORATED,

*Defendant-Appellee,*

*Cross-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 0906—**Sidney I. Schenkier**, *Magistrate Judge.*

ARGUED OCTOBER 27, 2010—DECIDED MAY 25, 2011

Before EASTERBROOK, *Chief Judge*, and KANNE and
WOOD, *Circuit Judges*.

KANNE, *Circuit Judge*. Raymond Moore sued Vital
Products, Incorporated ("Vital") in federal district court.
He alleged racial and sexual discrimination, a hostile
work environment, and retaliation, all in violation of
Title VII, and retaliatory discharge in violation of the

Illinois Workers' Compensation Act ("IWCA"). Vital moved for summary judgment on all counts, which the district court granted. Vital also moved for sanctions, which the district court denied. Moore appeals the grant of summary judgment on all counts, and Vital cross-appeals the denial of sanctions. Vital also requests sanctions for a frivolous appeal. We affirm the district court's grant of summary judgment as to Moore's Title VII claims, but reverse as to his IWCA retaliation claim. We also affirm the district court's denial of sanctions and reject Vital's latest motion for sanctions.

## I. BACKGROUND

The parties dispute many of the events leading up to this case. The narrative we present is based on Moore's (the non-moving party's) account, as found in the record.

Vital hired Moore effective August 16, 2004. Moore worked as a driver technician, delivering and installing durable medical equipment. Each day, Moore submitted a copy of the route he planned to use. Vital had only one functioning copy machine, which was located in the office of Richard Cocking, Vital's accounts manager.

Moore did not look forward to making copies in Cocking's office. Cocking sometimes brushed his body up against Moore's and blocked Moore from leaving or moving around in the office. In Cocking's office, Moore observed a calendar with pictures of men kissing and embracing other men, a picture of an apparently naked man sitting on a toilet, several items of sexual

paraphernalia, and other sexually suggestive items. Cocking called Moore "boo," "queen," "Mr. Man," "sweetie," "sexy," "big boy," and "trade." He also made an unwelcome reference to the size of Moore's penis.

Moore complained to his supervisor, Ricardo Matta, about Cocking's behavior and office décor. Matta dismissed the complaint, jokingly suggesting that Cocking was sexually interested in Moore. Matta also behaved inappropriately on other occasions. Shortly after Moore began working for Vital, Matta gave Moore unwelcome compliments about his appearance. At times, Matta called Moore "nigger," "bitch ass," "bitch ass nigger," "dumb ass," and "punk ass." Finally, Matta publicly questioned Moore's ability to attract women and implied that Moore possessed below-average intelligence. Matta made similar racial comments to Vital employee Glenn Davis, who is also black.

Another Vital employee, Jarilez Suarez, also made racial comments toward Moore. Once, Suarez and Matta showed some male employees pornographic videotapes. In August and September 2004, Moore wrote several letters complaining of racial and sexual harassment. He left these letters under the door of Vital's president, William Buzogany, who claims never to have received such a letter. Moore then requested a grievance form from Matta, who did not give him one.

On January 3, 2005, Moore was suspended for poor job performance. After returning to work, Moore injured his back on February 16, 2005. Since that date, Moore has not been present to work at Vital. On February 28, 2005, Vital filled out Moore's injury report.

Moore lost his health insurance coverage sometime before September 2, 2005. On that date, Moore's attorney sent a letter to Vital asking about the status of Moore's insurance coverage. Moore had not exercised his right to maintain coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Buzogany's response explained that Moore had failed to pay his COBRA premiums and that he had therefore lost his insurance coverage. Buzogany enclosed a copy of a previously-mailed COBRA notice, which Moore never received. The COBRA notice, dated February 21, 2005, includes language suggesting that Moore was no longer a Vital employee.

On December 7, 2005, Moore filed a Charge of Discrimination with the Equal Employment Opportunity Commission. In the EEOC charge, Moore alleged retaliation and a continuing and ongoing hostile work environment based on race and gender. The charge did not allege discriminatory or retaliatory discharge. Rather, Moore represented that he was still employed, though on injury leave.

On June 4, 2006, Buzogany drafted a letter informing Moore of an available position within the restrictions imposed by Moore's injury. The letter was never mailed to Moore, and Moore has asserted that he never saw the letter before filing suit.

On February 16, 2007, Moore filed suit in federal district court. He alleged a hostile work environment based on race and gender, discriminatory discharge, and retaliatory discharge, all in violation of Title VII. He also

alleged retaliatory discharge in violation of the IWCA. The district court granted summary judgment for Vital on all counts, but denied Vital's motion for sanctions. Moore appealed the grant of summary judgment, while Vital appealed the denial of sanctions. Vital also requested sanctions from this court.

## II. ANALYSIS

### A. Summary Judgment

We review a grant of summary judgment *de novo*. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010). We construe all facts and draw all reasonable inferences in favor of the nonmoving party. *Id.* Summary judgment is appropriate if the record shows that there is "no genuine issue as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Moore appeals the grant of summary judgment as to his hostile work environment, Title VII discriminatory discharge, Title VII retaliatory discharge, and IWCA retaliatory discharge claims. We address each in turn.

### 1. Hostile Work Environment

To bring a Title VII claim, a plaintiff must file an EEOC charge within 300 days of the conduct underlying the claim. 42 U.S.C. § 2000e-5(e)(1); *see also Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008). Any complaint of conduct that occurred more than 300 days

before the relevant EEOC charge is time-barred. *Chaudhry*, 546 F.3d at 836-37. Moore filed an EEOC charge on December 7, 2005, so he can only complain of a hostile work environment if it existed after February 10, 2005. *See* Fed. R. Civ. P. 6(a)(1). Moore did not show up to work at Vital on any day after February 16, 2005, and he does not claim to have been subject to a hostile work environment after that date. Therefore, he must show that a hostile work environment existed between February 10 and 16, 2005.

An employee need only file an EEOC charge within 300 days of the last hostile act in a continuous and ongoing hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002); *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006). To avoid summary judgment, therefore, Moore needed only to bring forth evidence that would allow a jury to conclude that some action contributing to the alleged hostile work environment took place after February 10. But Moore did not do so. He can identify no incident occurring between February 10 and 16 that even suggests the existence of a hostile work environment. Moore's strongest evidence is the EEOC charge itself, which alleges "continuous and on-going" harassment, and his deposition testimony that Cocking's inappropriate behavior occurred on "different occasions." This evidence would not allow a jury to find that any action after February 10 contributed to a hostile work environment. The grant of summary judgment on this claim was appropriate.

### 2. *Title VII Discriminatory Discharge Claims*

Moore claims he was discharged in violation of Title VII because Vital was motivated by racial and sexual discrimination in discharging him. The district court correctly held that Moore could not bring these claims because he had not included them in his EEOC charge. "Generally, a plaintiff may not bring claims under Title VII that were not originally included in the charges made to the EEOC." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). But if certain claims are not included in an EEOC charge, a plaintiff can still bring them if they are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*). To be "like or reasonably related," the relevant claim and the EEOC charge "must, at minimum, describe the same conduct and implicate the same individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis removed). Whether Moore's discharge claims are within the scope of his EEOC charge is a question of law. *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005).

Moore's discriminatory discharge claims were not like or reasonably related to the allegations in his EEOC charge. To be sure, Moore's EEOC charge shows (by checked boxes) that he was alleging sex discrimination, race discrimination, and retaliation claims. But merely checking the "Race" and "Sex" discrimination boxes in the EEOC charge is not enough to make the EEOC charge like or reasonably related to Moore's discriminatory

discharge claims. *See Cheek*, 31 F.3d at 500-01 (refusing to consider sex discrimination claim when plaintiff had not described conduct giving rise to the claim in an EEOC charge, even though plaintiff had checked the "sex discrimination" box).

In discussing the particulars of his allegations, Moore focused almost entirely on evidence of a sexually and racially hostile work environment. He mentioned inappropriate racial and sexual language, racial and sexual insults, and inappropriate sexual behavior. He contended that management ignored his complaints of sexual and racial harassment and that Matta and Cocking thwarted his attempts to file a grievance. The EEOC charge does include two complaints unrelated to the alleged hostile work environment: that Vital "retaliated against me by overloading my workload and by giving me assignments in unfamiliar and challenging neighborhoods." Notably, Moore did not assert in this narrative that he was discharged because of racial or sexual discrimination. Rather, Moore explained that he was "currently on medical leave." At best, the EEOC charge can be read to allege a hostile work environment and retaliation (though not retaliatory discharge). These harassment and retaliation allegations are not like or reasonably related to Moore's discriminatory discharge claims because they are not based on the same conduct. *See id.* at 500-02 ("[A] claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."); *Conner*, 413 F.3d at 678, 680 (EEOC allegation of racial

discrimination based on 2001 non-promotion not like or reasonably related to claim based on 2002 non-promotion); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination.").

Moore does not seriously argue that his discriminatory discharge claims are like or related to the allegations in his EEOC charge. Rather, he complains that he could not have included discharge allegations because he did not know he had been discharged. Moore points to no case suggesting an exception from the EEOC charge requirement when the plaintiff is confused about the underlying facts, and we decline to create one. Such an exception would run counter to a primary purpose of the requirement, which is to give the EEOC an opportunity to investigate the complaints and help the parties settle the dispute without litigation. *Cheek*, 31 F.3d at 500; *Conner*, 413 F.3d at 680 (finding EEOC charge prerequisite unmet because the conduct underlying plaintiff's complaint had not occurred when she filed her EEOC charge, and, as a result, "[t]here was no way for the EEOC to undertake preliminary investigation as contemplated by Title VII's statutory design"). In short, the district court correctly held that Moore cannot complain of discriminatory discharge because he has not alleged such conduct in an EEOC charge. Summary judgment was proper for these claims.

### 3. Title VII Retaliation

Moore's Title VII retaliation argument hardly warrants discussion. He claims Vital terminated him in February 2005 because he filed an EEOC charge in December 2004. But Moore actually filed his EEOC charge in December *2005*—several months after Moore claims he was discharged. No rational jury could conclude that Moore's filing of this EEOC charge caused him to be discharged several months prior.

### 4. IWCA Retaliation

Though it had dismissed all of Moore's federal claims, the district court exercised supplemental jurisdiction over his IWCA termination claim. *See* 28 U.S.C. § 1367(c). The district court then granted summary judgment as to that claim. The court relied on its conclusions that Moore had not presented evidence of his discharge and that any purported discharge occurred before Vital knew of Moore's intent to file a workers' compensation claim.

The parties spent much time and energy disputing whether Moore thought he had been discharged, but the only relevant question is whether Moore actually was discharged. Vital seems to have taken inconsistent positions toward Moore's employment status. The district court concluded that Moore was—and perhaps is—an employee of Vital on inactive status. On appeal, Vital argues that Moore abandoned his job by not showing up for work. These positions may or may not be consistent;

regardless, Moore has put forth evidence that creates a genuine dispute about whether he was discharged: his September 2, 2005, letter to Vital; Buzogany's response and the attached COBRA notice; and Buzogany's 2006 letter offering Moore a job.

Vital purports to have sent Moore a COBRA notice on February 21, 2005. The language of the notice suggests that Moore's employment relationship with Vital ended on or before that date. The notice reports that Moore's "medical coverage provided through Vital Products, Ltd. Terminated on 02/15/05." It also reports that, "to continue health benefits," Moore was obligated to pay COBRA premiums "for each month after [his] termination of employment." The words "termination of employment" contradict Vital's apparent contention that Moore was on inactive status. The purported mailing date of the COBRA notice is evidence that Moore did not abandon his job. Vital offers no standard by which we can determine whether Moore abandoned his job, but certainly a jury could conclude that Moore— who injured his back working at Vital on February 16— had not abandoned his job before February 21.[1] Because the COBRA notice suggests that Moore's employment at

---

[1] Perhaps Vital means to argue that it discharged Moore because he had not shown up to work for three consecutive business days. (February 21, 2005, was a Monday.) This argument would provide an alternative explanation for Moore's discharge, but causation is a question for the decisionmaker at trial.

Vital ended and that he did not end the relationship by abandoning his position, a jury could reasonably conclude that Vital discharged Moore.

The letters exchanged between Buzogany and Moore further muddy the issue of Moore's employment status. On September 2, 2005, Moore wrote to Vital inquiring about the status of his company health insurance. In the letter, Moore represented that he was a current Vital employee. Buzogany's response explained that Moore was no longer automatically covered by the company's plan, but that Moore was eligible for COBRA coverage. What Buzogany did not address is the reason Moore had lost his previous coverage. Vital may have thought Moore had abandoned his position, but Buzogany did not point this out to Moore. The next communication between Vital and Moore was a June 2006 letter Buzogany wrote, offering Moore a position within his health restrictions. Like Buzogany's September 2005 letter, this one shed no light on Moore's employment status.

This evidence taken together—particularly the language and purported mailing date of the COBRA notice—would allow a jury to conclude Vital had discharged Moore. But the timing and circumstances of any discharge are uncertain. Thus, supposing Vital did discharge Moore, there are genuine questions of fact regarding when it did so and whether Vital's actions were motivated by Moore's intention to file an IWCA claim. Accordingly, summary judgment was inappropriate for this claim.

*B. Sanctions*

Vital has come, shotgun in tow, seeking sanctions. *See United States v. Levy*, 741 F.2d 915, 924 (7th Cir. 1984) (noting that "the shotgun inclusion of issues . . . runs the risk of obscuring the significant issues by dilution"). In the district court, Vital moved for sanctions under 28 U.S.C. § 1927 and the first three subparts of Federal Rule of Civil Procedure 11. The district court denied Vital's motion. Undeterred, Vital seeks sanctions from this court under § 1927, 28 U.S.C. § 1912, and Federal Rule of Appellate Procedure 38. Moreover, Vital appeals the district court's decision, claiming it abused its discretion by not issuing sanctions. At no point does Vital bother to articulate the respective standards for issuing sanctions on these various bases.

Because Moore's appeal was partially successful, we need not thoroughly analyze most of Vital's sanction arguments. We do point out that Vital seeks sanctions from Moore and his counsel for causing unnecessary delay and for unreasonably multiplying the proceedings. *See* 28 U.S.C. §§ 1912, 1927. These requests seem to be based on Vital's claim that Moore and his counsel misrepresented the factual record. After reading the parties' briefs and scouring the record, we find that each side took liberties with the record throughout its brief. Similarly, each side has incorrectly stated, interpreted, or applied the relevant law at some point in its brief. Put simply, neither side can claim the high ground. Neither side, however, has misconstrued the record or misstated the law to a degree that compels us to issue sanctions.

**III. CONCLUSION**

We AFFIRM the district court's grant of summary judgment as to Moore's hostile work environment, Title VII discrimination, and Title VII retaliation claims. We REVERSE the grant of summary judgment as to Moore's IWCA retaliation claim and REMAND for further proceedings. Finally, we AFFIRM the district court's denial of sanctions and decline to impose sanctions in the first instance.