In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2747

CHRISTOPHER SOJKA, JR.,

*Plaintiff-Appellant,*

*v.*

BOVIS LEND LEASE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 1607—**Suzanne B. Conlon**, *Judge.*

ARGUED JANUARY 18, 2012—DECIDED JULY 10, 2012

Before BAUER, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Christopher Sojka, Jr. sustained severe eye injuries while working as a carpenter on the Trump Tower construction project. He sued Trump Tower's construction manager, Bovis Lend Lease, asserting that it had been negligent. Bovis moved for summary judgment on the ground that it did not owe Sojka any duty of care to provide a safe workplace, and (jumping from the general to the particular) that even if

it did, it had not breached such a duty because it had no knowledge that Sojka's safety glasses were inadequate to prevent the injury. Sojka failed to address this argument in his response to Bovis's motion for summary judgment. Bovis thus urged the court to grant its motion in light of what it saw as Sojka's concession that there was no dispute of material fact on that point, and that is exactly what the district court did.

In our view, even though the court was correct that Sojka conceded the eyewear point by failing to respond to it, this took too narrow a view of Sojka's case. His response to Bovis's motion for summary judgment— consisting of both a memorandum of law and a corresponding statement of material facts—addressed several other ways in which Bovis's negligence allegedly caused Sojka's injuries. We conclude that because a dispute of material fact remains on those theories, summary judgment for Bovis was inappropriate. We therefore reverse.

## I

In 2008, Sojka was working on the upper floors of the Trump Tower construction project in downtown Chicago. He was trying to repair a steel cable that held safety netting around the upper floors of the project when the wind knocked him back and a piece of metal struck his eye, causing severe injuries. Although Sojka was wearing safety glasses at the time, they apparently did not fit his face properly; instead, they left a small gap at the top of his eyes that allowed debris to penetrate.

Sojka sued Bovis Lend Lease in Illinois state court to recover for his injury. Bovis removed the action to federal court, as the parties are completely diverse (Sojka is domiciled in Illinois; Bovis is incorporated in Florida with its principal place of business in New York) and the amount in controversy exceeds $75,000.

The complaint contained one count of construction negligence, a cause of action recognized in Illinois law. Sojka alleged that Bovis had a duty to provide him with a safe workplace and then listed seven theories about how Bovis had breached this duty (in addition to an eighth catchall allegation that Bovis "was otherwise negligent"). The first four theories of breach all made a similar allegation: that Bovis knew or should have known that weather conditions at the site were unsafe at the time in question, and it either should not have allowed work to proceed or should have stopped ongoing work. The last three theories set forth general allegations about Bovis's failure to manage the site, failure to supervise work, and failure to provide a safe environment. The complaint made no mention of the eyewear issued to the workers.

The parties proceeded to discovery and Bovis moved for summary judgment. Bovis presented two arguments in support of its motion: it did not owe Sojka a duty of care under Illinois law, and even if it did, it did not breach that duty because it had no knowledge that Sojka's protective eyewear was inadequate. In Sojka's memorandum of law in response, he contested Bovis's view of its duties under Illinois law, but he responded

only generally to Bovis's argument about breach with respect to the safety glasses. In fact, Sojka stated that "the duty to provide a safe work site for all employees goes well beyond the issue of safety glasses." He argued that Bovis "shared responsibility for the dangerous conditions which led to Sojka's injuries" and thus proximately caused those injuries.

Although Sojka did not elaborate in the memorandum about the other dangerous conditions that caused his injury, he furnished that information in his attached Rule 56.1 statement of facts. The Rule 56.1 statement referred to evidence that wind was constantly a problem at the worksite and was a notable problem on the day of his injury. Bovis's employees had the authority to stop work in unsafe wind conditions and had done so in the past, but they did not do so on the day Sojka was hurt. The 56.1 statement also pointed to evidence that Sojka was a "greenhorn" (a carpenter without much experience) and thus Sojka should have been working with a more experienced "journeyman" to help him respond to the windy conditions and assess safety threats more accurately.

Bovis's reply asserted that Sojka had failed to respond to its argument about breach with respect to the safety glasses, and thus that the district court should find that Sojka had conceded the point. With that possibility conceded, Bovis maintained, it was entitled to summary judgment in its favor. The district court adopted Bovis's suggestion. Although the court found that Bovis owed Sojka a duty under Illinois law, it granted summary judgment based on Sojka's failure to respond to Bovis's

argument about the eye protection. The court noted that Bovis's original complaint had included theories of breach unrelated to eyewear, such as the allegation that conditions that day were too windy to permit safe work, but it explained that parties "cannot rest on complaint allegations at summary judgment" without "discuss[ing] any of the alleged acts or omissions" or "link[ing] them to evidence in the record to create a factual dispute for trial."

Sojka filed a motion to reconsider under Rule 59(e), arguing that his response to the motion for summary judgment *had* linked facts in the record to the allegations in his complaint; in support, he pointed to his Rule 56.1 statement. Sojka further complained that Bovis had unfairly narrowed the case to be solely about eyewear, even though that was not Sojka's theory of breach. In fact, Sojka admitted that he did not respond more directly to the eyewear issue because he conceded that Bovis had no knowledge that Sojka's eyewear was insufficient and thus there was no dispute of fact on that point. But, Sojka argued, that was not the end of the case. To the contrary, he had additional theories of breach, which were supported by deposition evidence set out in his Rule 56.1 statement of facts.

The district court denied Sojka's motion to reconsider. It rejected Sojka's citation to his Rule 56.1 statement because, in the court's view, "merely presenting statements of facts without arguing how they are relevant is insufficient. The court does not craft arguments for the

parties." Sojka now appeals both the grant of summary judgment and the denial of his motion to reconsider.

## II

We review the grant of a motion for summary judgment *de novo*, construing the facts and drawing all reasonable inferences in favor of the nonmoving party. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). Summary judgment is appropriate if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Id.* (citing FED. R. CIV. P. 56(a)).

It is clear from the summary judgment filings in the district court that a dispute of material fact remains, and thus summary judgment was inappropriate. As noted above, although Sojka conceded that there is no dispute of material fact on the eyewear issue, his submissions in response to Bovis's motion for summary judgment set out facts that support his theory that Bovis was negligent in permitting work to proceed in the first place. The facts, taken in the light most favorable to Sojka, show that Bovis had authority to stop work on account of inclement weather conditions, but it failed to do so even though on the day of Sojka's injury there were high winds. In addition, evidence in the record shows that Sojka should have been working with a more experienced carpenter, rather than on his own, in order to help him better respond to the windy conditions.

None of Bovis's arguments in its reply to these facts convinces us that summary judgment was appropriate. Bovis responded to the allegation that it should have stopped work by disputing the assertion that it had final authority to stop work in inclement weather. Instead, it said, such decisions were the product of a "group discussion" made with the subcontractor; they had to make a "unanimous decision" about whether work would proceed. But even if this is true, it does not show that Bovis was powerless to stop work that day. To the contrary, a trier of fact could find that its negative vote in the committee would have blocked a unanimous decision to permit work to go forward. Bovis also argues that Sojka's statement of facts misconstrued the underlying deposition testimony of James Payne, a concrete superintendent working with McHugh Construction (Sojka's direct employer), about whether Sojka should have been working with a more experienced carpenter. In Bovis's view, Payne's testimony did not address safety conditions but simply stated a truism that one would want all the help one could get in windy conditions. But that is not an accurate portrayal of Payne's deposition. Payne was told about the weather conditions on the day of the accident and told that Sojka had been working alone. He was then asked, "[G]iven [Sojka's] level of experience, is [working alone] a safe practice on this project in your opinion?" Payne's response: "No, it is not safe. I mean someone should have stayed there and helped him. . . . Somebody had to be there with him." He was then specifically asked whether that person should have been "a journey-

man with experience in doing that work" and answered, "Yes." This underlying deposition testimony thus supports Sojka's statement of facts.

There was no reason to grant summary judgment simply because Sojka included these facts in his Rule 56.1 statement rather than in his accompanying memorandum of law. Rule 56.1 is a local rule in the Northern District of Illinois that supplements Federal Rule of Civil Procedure 56, which governs summary judgment. (It is notable in this connection that Rule 56 itself, particularly as amended in 2010 and thus as worded on May 27, 2011, the date of the district court's ruling, does not require the facts or legal arguments to appear in any particular document. See Rule 56(c)(1).) Local Rule 56.1 "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005). "The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by FED. R. CIV. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'" *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)).

For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for sum-

mary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them. A litigant need not set out the same facts twice, however, in both the statement of facts and accompanying memorandum of law, in order to meet its burden to show that a dispute of fact remains. That would make the summary judgment process more, not less, cumbersome. Moreover, a party should not be faulted for following the rules and presenting material facts in its Rule 56.1 statement. The local rules "were not intended to provide a maze of technical traps to complicate and delay litigation without advancing the merits." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

In his motion to reconsider, Sojka explicitly pointed out to the district court that his Rule 56.1 statement contained facts supporting his additional theories of breach. At that stage, our review is only for abuse of discretion, but we think that the district court went too far when it refused to consider Sojka's facts when they were explicitly brought to its attention. In its rejection of Sojka's motion to reconsider, the court cited *Harney v. Speedway SuperAmerica LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008), for the proposition that presenting facts, without arguing how they are relevant, is insufficient. But that reading overstates *Harney* and discounts the importance of a Rule 56.1 statement of facts to the summary judgment process. In *Harney*, we held only that "[i]t is not the duty of the court to scour the *record* in search of evidence to defeat a motion for summary judgment; rather,

the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Id.* (emphasis added). Sojka did not make the district court scour the record; he followed Rule 56.1 and the principle in *Harney* and brought to the district court's attention the evidence in the record supporting his opposition to summary judgment. His memorandum of law also referred, in general terms, to the existence of additional theories of breach that went "well beyond the issue of safety glasses."

That is not to say that Sojka's response to Bovis's motion for summary judgment was by any measure ideal. It would have been much better for Sojka to call the court's attention more concretely to his additional theories in the accompanying legal memorandum, rather than relying just on his statement of facts. He could have included a separate argument section, for example, that spelled out why summary judgment was inappropriate because of the disputes of fact over Bovis's ability to stop work in high winds and Sojka's need to work with experienced supervision. Sojka's attorneys failed to do so, it seems, because they were operating on the assumption that they did not need to mention any of these other theories *at all*—whether in the memorandum or the statement of facts—given that Bovis had focused only on eyewear. Sojka's attorneys contend that despite the fact Bovis said that it was seeking summary judgment of the entire case, it seemed that in reality it was moving for *partial* summary judgment because Sojka had presented multiple reasons to find negligence—one for each of his theories

of breach—and Bovis discussed only one of those theories, about eyewear.

That view is untenable. Bovis did not move for "partial summary judgment" on an aspect of the case; Bovis moved for summary judgment seeking dismissal of the entire suit. And despite counsels' protestations, Sojka's complaint contains one count and one claim, construction negligence, committed in a variety of ways. A "claim is 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) (quoting *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943)). One claim supported by multiple theories does not somehow become multiple claims. See *id*. (Fourth Amendment claim of unreasonable seizure was one claim, even if plaintiff had multiple theories of why seizure was unreasonable).

Luckily, Sojka's attorneys did not rest exclusively on their erroneous view of the proceedings. They also referred to the additional theories of breach in their memorandum, and they supported this reference with facts in the accompanying Rule 56.1 statement. Combined, this was sufficient to defeat summary judgment.

At oral argument, Bovis's attorney raised the point that the record does not establish that the wind was actually unsafe on the day of Sojka's injury. Bovis had apparently set a threshold safety level of 25 miles per hour for wind, and Sojka's own meteorologist estimated that the winds that day were 22 miles per hour in the area in which Sojka was working. But Bovis conceded

that these facts were not presented in its summary judgment filings. If Bovis believed that this fact precluded summary judgment, it was Bovis's burden to "point[] out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Bovis did not mention wind speed specifically, nor did it state in general terms that the conditions that day were safe. Even if it had, furthermore, we do not believe that Bovis could have won summary judgment based on this evidence. A jury could still find, based on Payne's testimony among other things, that the actual conditions were unsafe where Sojka was working. *Cf. Mesman v. Crane Pro Servs.*, 409 F.3d 846, 852 (7th Cir. 2005) (safety standard evidence "ordinarily would be relevant though not conclusive"); see also *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138 (Ill. 2011) (same under Illinois law).

## III

Seeking to preserve its grant of summary judgment, Bovis also argues that we should reverse the district court's determination that it owed a duty of care to Sojka in the first place. We decline to do so.

In Illinois, when a project manager like Bovis entrusts work to an independent contractor—here, McHugh, Sojka's employer—the project manager owes the contractor's employees a duty of care only if it "retains the control of any part of the work." *Madden v. F.H. Paschen*, 916 N.E.2d 1203, 1218 (Ill. App. Ct. 2009) (quoting Re-

statement (Second) of Torts § 414). There is no dispute that Bovis retained a high degree of control over this worksite. But if the project manager never entrusts work to an independent contractor in the first place, then it does not matter if the manager exercises control over the work site. Even if it does, it cannot be liable to the independent contractor's employees. *O'Connell v. Turner Constr. Co.*, 949 N.E.2d 1105, 1108 (Ill. App. Ct. 2011).

Bovis argues that it never entrusted work to McHugh, because Bovis never entered directly into a contract with McHugh. Instead, McHugh entered into a contract with the owner of the Tower, and Bovis signed the contract as the owner's agent. Bovis thus argues that, like the construction manager in *O'Connell*, it never entrusted work to an independent contractor. But Bovis overreads *O'Connell*. In that case, the court concluded that a project manager did not entrust work to a subcontractor because it had not "actually selected the contractors or subcontractors," even though it had helped the site's owner in drafting contracts and handling construction bids. *Id*. Here, in contrast, the record shows that Bovis selected McHugh. Bovis does not explain why it should matter that it was technically acting as an agent for the owner when it made the selection. It was thus correct for the district court to conclude that Bovis had exercised sufficient control as the owner's agent in selecting McHugh to support a finding that Bovis had entrusted work to McHugh.

* * *

We REVERSE the district court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.